**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **ANGELA DIANA MATTHEWS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:10-CV-1351-BF** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a consent case before the United States Magistrate Judge. Angela Diana Matthews ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") to deny her widow's disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court has considered Plaintiff's Brief, filed February 23, 2011, Defendant's Brief, filed March 21, 2011, and Plaintiff's Reply Brief, filed April 4, 2011. The Court has reviewed the parties' evidence in connection with the pleadings and hereby orders that the Commissioner's decision be REMANDED for further administrative proceedings.

## I. BACKGROUND[1]

### A.    *Procedural History*

Plaintiff filed applications for SSI on April 11, 2008 and DIB on June 19, 2008, alleging a disability onset date of April 9, 2008. (Tr. 65-69; 194-201.) Her claims were denied both initially

---

[1]The following history comes from the transcript of the administrative proceedings, which is designated as "Tr."

and upon reconsideration. (Tr. 37-41; 188-92.) Plaintiff timely requested a hearing, and a hearing was

held on October 6, 2009 before Administrative Law Judge ("ALJ") Ward D. King. (Tr. 42-44; 206-

33.) On December 30, 2009, the ALJ issued a decision finding Plaintiff not disabled, and Plaintiff

requested review by the Appeals Council. (Tr. 13-15; 16-28.) The Appeals Council denied review

on March 12, 2010. (Tr. 4-9.) Plaintiff filed this action on July 9, 2010, seeking judicial review of

the administrative proceedings pursuant to 42 U.S.C. § 405(g).  (Doc. 1.)  This matter is ripe for

consideration on the merits.

### B.    *Factual History*

#### 1.    Plaintiff's Age, Education, and Work Experience

Born on September 3, 1958, Plaintiff was 49 years old on her alleged onset date and 51 years

old at the time of her hearing. (Tr. 66.) The ALJ properly found that her prescribed period ended on

September 30, 2009.  (Tr. 22.) Up until her alleged onset date of April 9, 2008, Matthews worked

part-time as a self-employed housekeeper. (Tr. 218.) Prior to that, she worked as a training specialist

for National Semiconductors until her position was eliminated in January of 1995. (Tr. 216.) She

has a high school education. (Tr. 215.)

#### 2.    Plaintiff's Medical Evidence

On April 30, 2007, Plaintiff was treated at John Peter Smith Hospital ("JPS") for complaints

of "generalized bodyache."  (Tr. 165.)  She was diagnosed with depression, fatigue, and arthralgias.

(Tr. 165.) At subsequent visits to JPS, she continued to complain of joint, back, and foot pain and

received diagnoses of arthralgias and fibromyalgia. (Tr. 154; 156-158; 160; 162). In May 2008, her

rheumatologist referred her to Dr. Michael Zeringue, who diagnosed her with fibromyalgia and

sacroiliitis and ordered numerous steroid injections and sacroiliacs joint injections. (Tr. 110; 113;

114; 117; 142-43; 144-45.) A shoulder injection gave her six weeks of pain relief, and on another occasion, Plaintiff reported a 50% reduction in pain. (Tr. 113-14.)  Matthews underwent bilateral facet blocks at L3-4, L4-5 and L5-S1 in March and May of 2009. (Tr. 140-43.) She reported the blocks had temporarily relieved her pain, and a physical examination revealed medial joint tenderness in the left knee and pain with external rotation of the tibia. (Tr. 111.) X-rays suggested osteoarthritis, and she was scheduled for a tarsal tunnel injection. (Tr. 111.) In July 2009, Plaintiff received tarsal tunnel injections in her left foot, which provided 30% relief. (110.) However, all pain relief was temporary. In August 2009, Dr. Zeringue noted "we have tried sacroiliac injections, we have tried facet injections, medial branch block injections in her lumbar spine . . . . Nothing has seemed to help her significantly. She seems to progressively get worse." (Tr. 180.)

In April 2008, x-rays revealed mild degenerative changes in the base of her right toe, and in June of 2009, x-rays showed slight degenerative spurring changes in both knees. (Tr. 134.) In July 2009, Plaintiff saw neurologist Scott Stoll, D.O., Ph.D, who noted that she walked with a limp favoring her left knee and diagnosed her with mild peripheral polyneuropathy in both legs. (Tr. 169-76; 182.) Medical records also show that at 5'6" and 232 pounds, Plaintiff is obese. (Tr. 154.) Plaintiff was diagnosed with chronic obstructive pulmonary disease ("COPD") in 2007. (Tr. 145.)

A state agency medical consultant ("SAMC") reviewed Plaintiff's medical records and determined that Plaintiff has the ability to lift  twenty pounds occasionally, lift ten pounds frequently, stand and/or walk for a total of six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Tr. 101.) The SAMC found no other limitations. (Tr. 101.)

3.     Plaintiff's Hearing

At the October 6, 2009 hearing, Plaintiff appeared without counsel and testified. (Tr. 208.)

Plaintiff stated that she had previously worked as a house cleaner for about fifteen years. (Tr. 215.)

Before that time, she worked for National Semiconductor as a training specialist. (Tr. 215-16.)

Because she was teaching at the front of a classroom, that job required a lot of standing, minimal

crouching, and occasionally lifting up to twenty pounds. (Tr. 216-17.) She was laid off after her

position was eliminated. (Tr. 217.) She then began working part time cleaning houses. (Tr. 218.)

However, she stopped in April 2008 because she was unable to clean due to pain all over her body.

(Tr. 218-19.) This pain prevented her from walking well and from bending over. (Tr. 218-19.) She

went to a doctor and was diagnosed with fibromyalgia. (Tr. 219.)

Plaintiff testified that she lives alone in a two story house and that her children help support

her. (Tr. 220-21.) She has to use the stairs each day to get to her bedroom but tries to go downstairs

just once per day.[2] (Tr. 221.) She has also been diagnosed with COPD and uses inhalers. (Tr. 221.)

Since April 2008, she has been treated once in the emergency room for a swollen ankle. (Tr. 222.)

She stated that she did not know how she hurt her ankle or why it became swollen. (Tr. 222.) She

also has arthritis in both knees, mostly in her left, and has been diagnosed with peripheral

polyneuropathy, which causes numbness and extreme pain in her feet. (Tr. 223-24.) She uses a cane

to walk, but the cane is not prescribed. (Tr. 225.)

Plaintiff also testified that she is able to stand, walk, or sit for only fifteen to twenty minutes

at a time due to pain in her hips, legs, feet, and back. (Tr. 226.) She uses an electric scooter at the

grocery store and avoids driving as much as possible because her pain medication makes her groggy.

(Tr. 226-27.) She stated that she is constantly in pain, which has caused depression. (Tr. 227.) She

---

[2] In her request for review to the Appeals Council, Plaintiff stated that she no longer has a second story bedroom because it has become too hard to climb stairs. (Tr. 15.)

4

has been depressed for about one and a half years, since the pain began, but is no longer seeing a psychiatrist because she did not believe it was helping. (Tr. 227-29.) She takes anti-depressants. (Tr. 228.)

A vocational expert ("VE") testified that an individual approaching advanced age with a high school diploma, the same work history as Plaintiff, and the Residual Functional Capacity ("RFC") to: (1) lift and carry twenty pounds occasionally and ten pounds frequently; and (2) sit, stand, and walk individually or in combination throughout an eight hour work day and otherwise perform the full range of light work; except the individual only can (3) occasionally climb ladders, scaffold, ropes, ramps and stairs; and (4) occasionally balance, stoop, kneel, crouch, and crawl could perform Plaintiff's past relevant work as a training specialist, both actually and generally performed. (Tr. 231-32.) He further testified that the additional limitations regarding the ability to climb and make positional changes would not significantly affect an individual's ability to perform the full range of light work. (Tr. 232.)

### C.    ALJ's Findings

First, the ALJ determined that Plaintiff met the nondisability requirements for disabled widow's benefits and that her prescribed period ended on September 30, 2009. (Tr. 22.) Second, the ALJ found that Plaintiff did not engage in substantial gainful activity after April 9, 2008, the alleged onset date of disability. (Tr. 22.) Third, the ALJ found the following combination of impairments to be severe: COPD, mild peripheral neuropathy of the lower extremities, osteoarthritis of her knees, sacroiliitis, fibromyalgia, lumbar spondylosis, and depression. (Tr. 22.) Fourth, the ALJ determined that none of these impairments meets or equals a listing in Appendix I of the Regulations. (Tr. 22.) Fifth, the ALJ found Plaintiff to have the following RFC: the ability to (1) lift and carry twenty

pounds occasionally and ten pounds frequently; (2) sit, stand, and walk (individually or in combination) throughout an eight-hour workday; and (3) otherwise perform the full range of light work, except that she only can (4) occasionally climb ladders, ropes, ramps, and stairs and (5) occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 23.) In making this determination, the ALJ found Plaintiff's testimony to be not fully credible and gave "great weight" to the SAMC's findings. (Tr. 24; 27.) Sixth, the ALJ found Plaintiff capable of performing her past relevant work as a training specialist. (Tr. 27.) Finally, the ALJ determined that Plaintiff has not been under a disability as defined by the Act from April 9, 2008 through the date of the decision. (Tr. 28.)

## II. STANDARD OF REVIEW

A claimant must prove that she is disabled for purposes of the Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.  If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the Regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. §405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

Having reviewed the applicable legal standards, the Court now turns to the merits of the case.

7

### III. ANALYSIS

Plaintiff argues: (1) the ALJ failed to consider properly the impact of Plaintiff's obesity on her ability to tolerate prolonged standing and walking; (2) the ALJ failed to consider properly Plaintiff's need for an assistive ambulatory device in assessing her ability to tolerate prolonged standing and walking; and (3) substantial evidence does not support the ALJ's RFC determination.

### A. Impact of Obesity

The ALJ determined that Plaintiff has the RFC to stand and walk, individually or in combination, for up to eight hours. Plaintiff contends the ALJ erred by failing to consider the impact of Plaintiff's obesity in conjunction with her arthritic knee pain and other orthopedic impairments on her ability to stand and walk for a prolonged period of time, as is required to perform her past relevant work.

Social Security Ruling ("SSR") 02-1p concerns the evaluation of obesity. SSR 02-1P, 2000 WL 628049.  The ruling provides that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* at *1. Notably, it instructs adjudicators to consider the effects of obesity at all steps of the evaluation process, including the RFC determination. *Id.*  SSR 02-1p also states:

> "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record."

In his decision, the ALJ explained, "I considered Ms. Matthews' obesity, per SSR 02-1p." (Tr. 26.) Defendant contends that this statement in conjunction with the evaluation of the medical record and the determination that Plaintiff's "subjective complaints of pain are out of proportion to the objective medical evidence" are sufficient to satisfy the requirements of SSR 02-1p. The Court

8

disagrees. Nothing beyond the ALJ's boilerplate statement that he considered Plaintiff's obesity indicates he actually evaluated the effects obesity may have on Plaintiff's other impairments. As in *Scott v. Heckler*, 770 F.2d 482, 487 (5th Cir. 1985), the ALJ's evaluation of evidence "addresses each impairment separately and does not specifically discuss the interaction or cumulation of all the claimant's medical problems."

Furthermore, the ALJ discounted Plaintiff's subjective complaints of pain and functional limitations because they are "out of proportion" to the medical evidence. However, the ALJ did not evaluate how the severity of Plaintiff's subjective complaints could be attributed to obesity. Defendant argues that, in accordance with SSR 02-1p, the ALJ will not make any assumptions about obesity without objective medical evidence demonstrating limitations. Defendant misreads SSR 02-1p. SSR 02-1p does not require objective medical evidence. Rather, it provides that the ALJ will evaluate obesity based on the *information in the record*, which includes hearing testimony. SSR 02-1p at *6 (emphasis added). Plaintiff's testimony at the hearing indicated that her obesity may cause greater limitations than her other impairments separately. Because Plaintiff's past relevant work requires prolonged sitting and standing, this issue is particularly important to Plaintiff's case. In addition, the decision to discount Plaintiff's testimony, due to the severity of her subjective complaints, affected several other portions of the ALJ's decision, including Plaintiff's need for assistive ambulatory device. The Court finds that the ALJ committed prejudicial error by failing to properly evaluate the effect Plaintiff's obesity may have on her ability to stand and/or walk for an extended period of time.

Because the Court has determined the case should be remanded for reconsideration based on the foregoing reason, it does not reach Plaintiff's remaining arguments.

## III. CONCLUSION

The Court finds that the ALJ committed prejudicial error. It is therefore ordered that the case

be REMANDED for further administrative proceedings.

SO ORDERED, August 25, 2011.


_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE